**Olga ULICNY, Executrix of the Estate of Thomas J. Ulicny, and Olga Ulicny, in her own right**

v.

**NATIONAL DUST COLLECTOR CORPORATION, a Division of Environeering, Inc., et al.**

**Civ. A. No. 71–3088.**

United States District Court, E. D. Pennsylvania.

April 10, 1975.

Joseph F. Leeson and Edward G. Ruyak, Bethlehem, Pa., for plaintiff.

Robert J. Murphy and Joseph J. Murphy, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This case presents the question of whether the Pennsylvania Workmen's Compensation Act, 77 Pa.Stat.Ann. § 1 et seq., bars recovery of damages against an employer guilty of "reckless and wanton conduct in disregard of the safety of others". We hold that it does.

The case comes to us because of diversity of citizenship. Plaintiff seeks damages under the Pennsylvania Wrongful Death and Survival Acts, 12 Pa.Stat. Ann. §§ 1601–1604; 20 Pa.Stat.Ann. § 3371, for the death of Thomas J. Ulicny, who suffered fatal injuries on December 29, 1970, while helping to install dust control equipment on the premises of the Buffalo Pipe and Foundry Company (Buffalo Pipe) in Quakertown, Pennsylvania. Thomas Ulicny was an employee of third party defendant, Northern Lehigh Equipment Corporation (Northern Lehigh), which in turn was a subcontractor of defendant, National Dust Collector Corporation, a division of Environeering, Inc. (National Dust). Defendants William Walker and Leslie S. Nurton, employees of National Dust, were in the process of supervising the installation of the dust control system. It is undisputed that National Dust was in control of that portion of Buffalo Pipe's premises where the work was being carried on by Northern Lehigh. National Dust was also the manufacturer and designer of the dust control equipment, which it had sold to Buffalo Pipe.

The gravamen of plaintiff's claim is that National Dust's employees activated the steel cover of the dust collecting system at the top of a stack where plaintiff's decedent was working, causing the steel cover to close on him and thereby crushing him and causing his death.[1] The complaint and pre-trial memoranda allege that the acts or omissions of Na-

---

1. In her complaint plaintiff also named as defendants "John Doe and John Doe Corporation", who were identified as the manufacturers of a hydraulic cylinder and lift controls which were used in the counterbalancing of a steel plate (presumably the cover) at the top of the stack. We draw from the complaint the allegation that it was a malfunction in the hydraulic system (or a defective design) that caused the hydraulic system to activate and the plate or cover to close on plaintiff's decedent. However, plaintiff was unable to develop any evidence supporting a theory against John Doe or John Doe Corporation, or even to identify them, for there is no mention of them in plaintiff's pretrial memorandum. Plaintiff's counsel has advised us that his investigation determined that the hydraulic cylinder and lift controls were also made by National Dust; accordingly, plaintiff's claim against John Doe and John Doe Corporation has been abandoned.

tional Dust leading to plaintiff's decedent's demise were "reckless", "wanton" and "willful", as well as "negligent".

■ The ninth defense pleaded by National Dust in its answer is that it was the statutory employer of plaintiff's decedent under the Pennsylvania Workmen's Compensation Act, 77 Pa.Stat.Ann. § 1 et seq. [hereinafter cited as the Act], and that it therefore cannot be liable to the plaintiff for damages. At a pre-trial conference held in the case, plaintiff's counsel conceded that National Dust was decedent's statutory employer [2] and agreed that if the acts or omissions of National Dust rose no higher than ordinary negligence, judgment must be entered for the defendants since under the Act, 77 Pa.Stat.Ann. §§ 52, 462, no common law recovery may be had against a statutory employer. However, plaintiff's counsel contended that the Act does not bar recovery where the conduct of the statutory employer rises to willfulness, recklessness or wantonness, or, as he synthesized plaintiff's allegations, "reckless and wanton conduct in disregard of the safety of others." It was counsel's position that this proposition attained since in a case involving such type of conduct, there would be no "accident" to trigger application of the exclusive provisions of the Workmen's Compensation Act.

■ Defendants deny that their conduct was even negligent. However, the parties agreed at the pre-trial conference that, following the receipt of briefs, the Court should make a legal determination on the question of whether the statutory employer defense immunizes National Dust from liability notwithstanding proof of reckless and wanton conduct in disregard of the safety of others. Moreover, the parties agreed that if the Court made that determination affirmatively, it should enter judgment for the defendants; otherwise, the matter should proceed to trial. This stipulation of the parties was memorialized in a memorandum of record. Because we believe that it is plain that the Act immunizes National Dust even though it be chargeable with "reckless and wanton conduct in disregard of the safety of others", we will grant judgment for the defendants.

In Evans v. Allentown Portland Cement Co., 433 Pa. 595, 252 A.2d 646 (1969), plaintiff's decedent was a minor who was assigned by his employer (Portland Cement Company) the duties of hand-shoveling certain "rock spillage" onto a conveyor belt at a point in close proximity to an unprotected area of the belt. The minor sustained fatal injuries when he lost his footing and was dragged onto the belt. Plaintiff's complaint alleged "willful, wanton, reckless, negligent, careless and unlawful" acts of Portland Cement Company in connection with the installation and maintenance of the belt and in connection with the assignment of the minor to those duties, allegedly in violation of certain Department of Labor and Industry rules. The employer [3] filed preliminary objec-

---

2. Our Court of Appeals recently had occasion to interpret the statutory employer section, 77 Pa.Stat.Ann § 52, as setting forth five requirements which an employer must meet to establish that he is a statutory employer. These are:
   (1) An employer who is under contract with an owner or one in the position of an owner.
   (2) Premises occupied or under control of such employer.
   (3) A subcontract made by such employer.
   (4) Part of the employer's regular business entrusted to such subcontractor.
   (5) An employee of such subcontractor.
Hattersley v. Bollt, 512 F.2d 209, 218 (3d Cir.,

1975). *Accord*, McDonald v. Levinson Steel Co., 302 Pa. 287, 295, 153 A. 424, 426 (1930); Pape v. Smith, 227 Pa.Super. 80, 83, 323 A.2d 856, 857 (1974).

The facts surrounding the alleged statutory employer relationship in *Hattersley* are strikingly similar to those at bar. There, as here, an independent contractor was in control of a portion of an owner's building and an employee of a subcontractor was injured. In *Hattersley*, Judge Van Dusen found a statutory employer relationship to exist.

3. We perceive no difference between an ordinary employer and a statutory employer with respect to the legal issue presented here.

tions pleading the Act as a bar, and the Berks County Court of Common Pleas sustained the objections and dismissed the complaint. The Pennsylvania Supreme Court affirmed, holding that even though decedent was allegedly killed as the result of his employer's willful and unlawful violation of statutory safety provisions, the Act barred common law recovery.[4]

*Evans* is in accord with the overwhelming weight of authority on this point. The general principle, as stated in 2 Larson, The Law of Workmen's Compensation § 68.13 (1975) [hereinafter cited as Larson] is as follows:

> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute or other misconduct of the employer short of genuine intentional injury.

*Accord*, Hagger v. Wortz Biscuit Co., 210 Ark. 318, 196 S.W.2d 1 (1946) (cannot recover at common law for "willfully and recklessly" storing gasoline); Law v. Dartt, 109 Cal.App.2d 508, 240 P.2d 1013 (1952) (cannot recover at common law for "malicious misconduct of defendant in permitting plaintiff to work on the machine without proper in-

struction"); Southern Wire & Iron, Inc. v. Fowler, 217 Ga. 727, 124 S.E.2d 738 (1962) (cannot recover at common law for willful failure to furnish the employee a safe place to work); Wilkinson v. Achber, 101 N.H. 7, 131 A.2d 51 (1957) (a willful, deliberate or culpable act did not take the case out of the compensation act); Bryan v. Jeffers, 103 N.J.Super. 522, 248 A.2d 129 (1968) (gross negligence held not to be equatable with "intentional wrong" so as to permit a tort action against a fellow employee, which is ordinarily barred in New Jersey); Ross v. State, 8 A.D.2d 902, 187 N.Y.S.2d 13 (3d Dep't. 1959) (the "deliberate, intentional, wanton and gross negligence" of the decedent's supervisors did not take the case from the ambit of compensation coverage); Castleberry v. Frost-Johnson Lumber Co., 283 S.W. 141 (Comm. of App., Tex.1925) (cannot recover at common law for gross negligence).[5]

In view of Evans[6] and the prevailing case law which it typifies, we are constrained to hold that even if National Dust and/or its employees Walker and Nurton were guilty of reckless and wanton conduct in disregard of the safety of others, the remedy of the Pennsylvania Workmen's Compensation Act is exclusive and no recovery at common law can be had. Thus, within the charter of the pre-trial conference agreement noted above[7], judgment must be entered for the defendants.

---

4. The Pennsylvania Supreme Court's opinion in *Evans* does not fully set forth the allegations of the plaintiff's complaint. However, we have obtained them from the printed record in the case.

5. The line of cases typified by *Evans* is thus distinguishable from the line of cases supporting the right of common law action against the employer for a deliberate or intentional tort inflicted upon the employee. As Larson notes at § 68.00, the theory supporting a common law action in such circumstances is that an intentional tort cannot be deemed an "accidental" injury so as to come under the exclusive provisions of the Compensation Act. *Accord*, Readinger v. Gottschall, 201 Pa. Super. 134, 191 A.2d 694 (1963). We need

not address here the impact of the May 1972 Amendments to the Pennsylvania Act, 77 Pa.Stat.Ann. § 1, on the intentional tort exception. Under these amendments it is no longer necessary for a claimant to establish an "accident" in the course of employment to recover compensation; an "injury" will suffice.

6. We are, needless to say, bound by Pennsylvania law herein.

7. The pre-trial conference agreement essentially constitutes a submission as on defendants' motion for summary judgment, there being added to the pleadings the (uncontested) factual stipulation that National Dust was plaintiff's decedent's statutory employer.

 

In accordance with the foregoing Memorandum Opinion, we enter the following Order:

## ORDER

And now, this 10th day of April, 1975, in accordance with the foregoing Memorandum Opinion, it is ordered that judgment is entered for all defendants.