791 F.2d 30
 Joseph WILSON and Margaret Wilson, his wife, and Dominick
Triola and Genevieve Triola, his wife, and Romolo Timoteo
and Carolyn Timoteo, his wife, and Claire Sims and Albert
Sims, her husband; and Helen Adams and John Adams, her husband
v.
ASTEN-HILL MANUFACTURING COMPANY and Raybestos Manhattan,
Inc.; and Bell Asbestos Mines, Ltd., and Cassiar
Asbestos Corp., Ltd.; and United States
Gypsum Company, and National
Asbestos Company, Inc.
v.
AMATEX CORPORATION and Asbestos Corporation, Ltd. and
Johns-Manville Corporation and Southern Asbestos Corporation
and Turner & Newall, Ltd. and Carolina Asbestos Company and
H.K. Porter and Asten Hill, Inc. and Brinco Mining Limited.
Appeal of Joseph and Margaret WILSON, Dominick and Genevieve
Triola, Romolo and Caroline Timeteo, Claire and
Albert Sims, and Helen and John Adams.
 No. 85-1386.
 United States Court of Appeals, Third Circuit.
 Submitted Pursuant to Third
Circuit Rule 12(6)
 March 7, 1986.
May 21, 1986.
 
 Robert J. Gordon, Jane C. Fischer, Greitzer and Locks, Philadelphia, Pa., for appellants.
 James A. Young, Timothy I. McCann, Sprecher, Felix, Visco, Hutchison & Young, Philadelphia, Pa., for appellee Asten-Hill Mfg. Co.
 Before GIBBONS, BECKER, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This is an asbestos personal injury action brought by four workers and their spouses against their former employer. The district court granted defendant's motion to dismiss for failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6), on the grounds that plaintiffs' claims were barred by the Pennsylvania Workmen's Compensation and Occupational Disease Acts. Plaintiffs' appeal is grounded on the argument that their complaint stated a claim for relief under the "intentional tort" exception to the Workmen's Compensation exclusivity provisions ("comp-bar"). We conclude that, even assuming that the judicially created intentional tort exception to the comp-bar is still viable under Pennsylvania law, see infra note 3, plaintiffs' allegations fail to state a claim within that exception. Accordingly, we affirm.
 
 I.
 
 2
 Appellants, former employees of appellee Asten-Hill Manufacturing Company ("Asten-Hill") and their spouses, brought suit in Philadelphia Common Pleas Court on December 19, 1978, against Asten-Hill and various suppliers of asbestos, alleging that during their employment at Asten-Hill they were exposed to asbestos fibers, and that, as a result, they contracted asbestosis.[1] Some of Asten-Hill's co-defendants and certain third-party defendants filed counterclaims or crossclaims against Asten-Hill. On January 1, 1979, the case was removed to the district court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. Sec. 1441 (1982). The federal court's jurisdiction was based on diversity of citizenship, 28 U.S.C. Sec. 1332 (1982).
 
 
 3
 In their complaint, appellants alleged that Asten-Hill had long possessed medical and scientific data that clearly indicated that the inhalation of asbestos dust and fibers in the course of the ordinary and foreseeable use of its asbestos products was unreasonably dangerous and carcinogenic. They further alleged that Asten-Hill withheld scientific data and disseminated outdated scientific data, failed to provide warnings of known risks, and failed to test products adequately. The complaint further stated that the defendants had acted "willfully, maliciously, callously, deliberately, and with wanton disregard for the rights, safety, and position of plaintiffs and other persons similarly situated," and that they had "fraudulently and deliberately" exposed the plaintiffs to asbestos fibers.
 
 
 4
 Asten-Hill moved to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. The basis of Asten-Hill's motion was that the exclusivity provisions of both the Pennsylvania Workmen's Compensation and the Occupational Disease Acts barred plaintiffs' action against their employer.[2] On April 6, 1983, the district court granted the motion and simultaneously dismissed the claims of the other defendants and third-party defendants against Asten-Hill. The plaintiffs' claims against the remaining defendants were tried on April 15 and 16, 1985. On May 15, 1985, the district court entered judgment on plaintiffs' behalf against one of the suppliers, Bell Asbestos Mines, and dismissed the claims against the other suppliers. At this time, the district court made final the April, 1983 dismissal of the claims against Asten Hill. We are now presented with plaintiffs' appeal of that dismissal. The other defendants and third-party defendants have not appealed the dismissal of their crossclaims against Asten-Hill.
 
 II.
 
 5
 A federal court sitting in a diversity action must apply the substantive law of the state in which it sits and thus must predict how the highest state court would resolve the case. Brown v. Caterpillar Tractor Co., 696 F.2d 246, 250 (3d Cir.1982). In this case, we must predict whether the Pennsylvania Supreme Court would permit employees who are eligible for benefits under the Pennsylvania Workmen's Compensation and Occupational Disease Acts to bring a third-party claim against their employer on an intentional tort theory predicated upon the allegations of the complaint in this case.
 
 
 6
 Pennsylvania enacted its Workmen's Compensation Act in 1915, Pa.Stat.Ann. tit. 77, Sec. 1, et seq., and its Occupational Disease Act in 1938, Pa.Stat.Ann.tit. 77, Sec. 1201, et seq. Both Acts were based on a theory of "trade-offs." They provided certain compensation for the disability or death of an employee caused by an injury or occupational disease arising out of and in the course of employment. In return for these guaranteed payments, the employer was given immunity from common law suits by employees. 77 Pa.Stat.Ann. Secs. 481(a), 1403. This Court has explained the purpose of these provisions:
 
 
 7
 The statutory scheme thus operates on a law of averages. In some instances where he could prove negligence, an employee may receive less compensation than he would recover in damages in a common law suit. In other situations, an employer may have to pay compensation where he would not be liable for any sum at common law. Despite inequities in specific cases, the underlying assumption is that, on the whole, the legislation provides substantial justice.
 
 
 8
 Weldon v. Celotex Corp., 695 F.2d 67, 70 (3d Cir.1982).
 
 
 9
 In Readinger v. Gottschall, 201 Pa.Super. 134, 191 A.2d 694 (1963), a panel of the Pennsylvania Superior Court established an exception to the comp-bar, holding that an intentional assault upon an employee by an employer was actionable. Thus was born in Pennsylvania the "intentional tort" exception to the comp-bar. Our present task is to predict the scope of the exception. A canvas of the case law convinces us that the Pennsylvania Supreme Court would not consider allegations such as plaintiffs' as falling within the exception.[3]
 
 III.
 
 10
 The Pennsylvania Supreme Court has dealt with the scope of the intentional tort exception just once, and then only implicitly. In Evans v. Allentown Portland Cement Co., 433 Pa. 595, 252 A.2d 646 (1969), the court held that despite allegations of an employer's willful and unlawful failure to provide safeguards on a conveyor system, the employee-plaintiff's sole remedy was under the Workmen's Compensation Act. The court made no reference to the intentional tort exception.
 
 
 11
 The Pennsylvania Superior Court, in a detailed and thoughtful discussion of the intentional tort exception, recently attached much significance to Evans. The reasoning of that case, Higgins v. Clearing Machine Corporation, 344 Pa.Super. 325, 496 A.2d 818 (1985), strongly suggests that appellants in the instant case did not state a claim within the intentional tort exception.
 
 
 12
 In Higgins, the plaintiff, who had been injured while operating an unguarded punchpress, alleged intentional misconduct by the defendants in not taking action to prevent a known hazard. The Higgins panel held that such actions do not bring a case within the intentional tort exception, observing:
 
 
 13
 Kelsey-Hayes' alleged "intentional, wanton and willful" conduct herein comprises its repeated violation of safety regulations and its neglect of a known dangerous condition. Clearly, these allegations should properly be aligned with those presented to our Supreme Court in Evans, supra. No allegation is made that Kelsey-Hayes intended to injure Higgins.
 
 
 14
 Id. at 331, 496 A.2d at 821 (emphasis added). Similarly, in the case at bar plaintiffs did not allege that it was the purpose of defendants to injure them. Higgins, which is a very recent opinion by the highest Pennsylvania court directly addressing the scope of the intentional tort exception, strongly counsels that we affirm the dismissal of plaintiffs' case. See Goodwin v. Elkins & Co., 730 F.2d 99, 111 n. 23 (3d Cir.1984) ("In the absence of a starkly defined irregularity of decision, therefore, we decline to hypothesize a disagreement between the Pennsylvania Supreme Court and the state's intermediate appellate court.").[4]
 
 
 15
 Larson's treatise on workmen's compensation, regarded as influential by Pennsylvania courts, supports this conclusion:
 
 
 16
 Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute or other misconduct of the employer short of genuine intentional injury.... Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.
 
 
 17
 2A Larson, The Law of Workmen's Compensation, Sec. 68.13 (1975). This summary strikes us as a fair rendering of Pennsylvania law on the issue.
 
 
 18
 In sum, we predict that the Pennsylvania Supreme Court would not extend the intentional tort exception to the allegations of this case. It is, of course, for that court to settle the matter definitively, and in view of the large number of cases in the federal courts raising this issue, we urge it to do so as soon as the opportunity presents itself.[5]
 
 
 19
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Joseph Wilson worked as a maintenance machinist and research and development mechanic from 1956 until 1977. Dominick Triola worked as a twister and card room mechanic from 1952 until 1970. Claire Sims worked as an "endless girl" and burler from 1945 until 1978. Romolo Timoteo worked as a calendar operator and weaver fixer from 1949 until 1978
 
 
 [2]
 Employees who suffered from work-related asbestos diseases prior to 1972 had to seek compensation under the Occupational Disease Act. Pa.Stat.Ann. tit. 77, Secs. 1208(1), 1403 (Purdon 1952). In 1972, the Workmen's Compensation Act was amended to include within its coverage asbestos-related diseases as well as other enumerated occupational diseases. Pa.Stat.Ann. tit. 77, Sec. 27.1(1) (Purdon 1952 & Supp.1985). An employee suffering from asbestos-related diseases may now begin compensation proceedings under either Act, Pa.Stat.Ann. tit. 77, Sec. 1000, if the employee's total or partial disability occurred in whole or part as the result of exposure to asbestos after June 30, 1973. Pa.Stat.Ann. tit. 77, Sec. 411(2); Asbestos Insulating Co. v. Workmen's Compensation Appeal Board, 73 Pa. Cmwlth. 86, 457 A.2d 1320 (1983). Thus, because appellants Wilson, Timoteo and Sims allege they were exposed to asbestos through 1977 and 1978, their claims are governed by both Acts. Appellant Triola's claim is governed solely by the Occupational Disease Act because Triola alleges in his complaint that his last date of exposure to asbestos was 1970
 
 
 [3]
 There is some question whether the intentional tort exception survived the Pennsylvania legislature's 1972 amendment to the Workmen's Compensation Act. Under the amendment, workmen's compensation covers not only "accidents," but all injuries arising "in the course of employment." Appellee argues that, after the amendment, even "intentional torts" are covered by the Act and hence are not actionable outside of the Act. The Pennsylvania Supreme Court has not ruled on whether the 1972 amendment eliminates the intentional tort exception and lower Pennsylvania courts have not been uniform on this point. Compare Getz v. Rohm and Haas Co., No. 576 (2563A) (Phila.C.C.P. October 24, 1984) (exception not eliminated by 1972 amendment) with Hogey v. Morello Excavating Co., 28 D & C3d 451, 457 (Mont.C.C.P.1984) (exception no longer viable); Cf. Higgins v. Clearing Machine Corporation, 344 Pa.Super. 325, 496 A.2d 818 (1985) (effect of 1972 amendment on intentional tort exception is uncertain). Because we find that appellants have failed to state a claim against Asten-Hill that falls within the intentional tort exception, we need not decide whether the exception remains viable. That important question of state law is, of course, best decided by the Pennsylvania Supreme Court
 
 
 [4]
 Some Pennsylvania courts lower than the Superior Court have addressed the intentional tort exception in asbestos cases, but no uniform approach has emerged. Compare Getz v. Rohm and Haas Co., No. 576 (2563A) (Phila.C.C.P. October 24, 1984) (intentional tort of fraudulent misrepresentation will lie where the employer is alleged to be responsible for the intentional aggravation of an employee's asbestos disease) with Anastasi v. Pacor, Inc. No. 6251 (Phila.C.C.P. March 8, 1983), aff'd., 349 Pa.Super. 610, 503 A.2d 44 (Pa.Super.1985) (plaintiff alleged that her husband died from lung cancer due, in part, to his exposure to asbestos, and that defendant, knowing its dangers, had intentionally exposed him to asbestos. Court held that plaintiff could not present evidence of asbestos exposure as part of her claim because the Occupational Disease Act barred recovery.)
 Consideration of the federal courts that have applied Pennsylvania law on the scope of the intentional tort exception, on balance, supports the dismissal of plaintiffs' case. See Weldon v. Celotex Corp., 695 F.2d 67 (3d Cir.1982) (holding that similar allegations of an employer's recklessness in permitting asbestos exposure were subject to the comp-bar, though explicitly declining to address whether the allegations stated a cause of action within the intentional tort exception because that issue was not raised by plaintiffs); Tysenn v. Johns-Manville Corp., 517 F.Supp. 1290 (E.D.Pa.1981) (plaintiff's former employer's knowledge of the risk of cancer inherent in its employees' exposure to asbestos not an intentional tort so as to enable recovery under the exclusive remedy provision of the Act); Ulicny v. National Dust Collection Corp., 391 F.Supp. 1265 (E.D.Pa.1975) (non-asbestos case in which husband was killed when he was struck by the steel cover of a dust collecting system. Court held that "reckless," "wanton," "wilful," and "negligent" conduct did not fall within the intentional tort exception.); contra Neal v. Carey Canadian Mines, Ltd., 548 F.Supp. 357 (E.D.Pa.1982), aff'd. on other grounds sub nom., Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir.1985) (employer's conduct in asbestos case held to be an intentional tort and thus compensable outside the Workmen's Compensation Act).
 
 
 [5]
 We add that the Pennsylvania legislature might consider adopting the approach of the many states which permit a federal court to certify questions of unclear state law to the highest state court. See IA, Part 2 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 0.203 (2d ed.1983)